UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------- x

HOTI ENTERPRISES, L.P. and
HOTI REALTY MANAGEMENT CO., INC.,

                             Appellants,

against                                            Case No.   12-cv-08030-VB

GECMC 2007-C1 BURNETT STREET, LLC

                             Appellee
--------------------------------------------------------- x

## APPELLANTS' BRIEF IN SUPPORT OF APPEAL

**Mark A. Frankel**
**BACKENROTH FRANKEL & KRINSKY, LLP**
**489 Fifth Avenue**
**New York, New York   10017**

**Telephone:   (212) 593-1100**
**Facsimile:   (212) 644-0544**

**ATTORNEYS FOR THE APPELLANTS**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES                                                                 3

BASIS OF APPELLATE JURISDICTION                                                      4

STATEMENT OF ISSUE ON APPEAL AND
APPLICABLE STANDARD OF REVIEW                                                        4

STATEMENT OF FACTS                                                                   4

General Background                                                                   4

The Foreclosure Action                                                              5

The Cash Collateral Stipulation and the Lift Stay Order                             5

The State Court Dismissal of the Foreclosure Action                                 7

The GE Creditor's Chapter 11 Plan                                                   7

The State Court's Decision finding that GE lacks a properly perfected security interest    8

Confirmation of the Chapter 11 Plan                                                 9

ARGUMENT                                                                            9

The Bankruptcy Court is bound by the State Court finding that GE does not have a
properly perfected security interest based upon res judicata, collateral estoppel and
the Rooker Feldman doctrine                                                         9

Although the State Court acknowledged during *colloquy* that the ultimate issue in
the Foreclosure Action was whether GE was properly perfected as of the Foreclosure
Action commencement, the *State Court Decision* considered GE's subsequently created
perfection documents and determined that those documents were ineffective          14

The Lift Stay Order granted the State Court authority to determine the perfection of
GE's security interests, whether or not the Cash Collateral Stipulation was presented to
the State Court                                                                     16

CONCLUSION                                                                          17

## **TABLE OF AUTHORITIES**

### **Cases**

*Butner v. U.S.*, 440 U.S. 48 (1979)                                        9, 13

*In re Haven Eldercare, LLC*, Case no. 12-468-bk (2d. Cir. Nov. 15, 2012)    9, 10,
                                                                             11, 15

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)                          10

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)      10

*Swiatkowski v. Citibank*, 745 F.Supp.2d 150 (E.D.N.Y. 2010) aff'd 446
Fed.Appx. 36 (2d. Cir. 2011)                                                 11

### **Statutes and Rules**

28 U.S.C. 158(a)(1)                                                          4

Fed. R. Bank. P. 9024                                                        4

Fed. R. Bank. P. 8013                                                        4

28 U.S.C. 1334(b)                                                            10

## BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. 158(a)(1) as an appeal from a final order of the United States Bankruptcy Court for the Southern District of New York.

## STATEMENT OF ISSUE ON APPEAL AND APPLICABLE STANDARD OF REVIEW

The issues on appeal are (a) whether the Bankruptcy Court erred in confirming Appellee's Chapter 11 Plan, and (b) whether the Bankruptcy Court erred in denying the Appellants' Motion to reconsider confirmation of the Chapter 11 Plan.   Issues of law may be reviewed *de novo*.   The standard of review for findings of fact is the "clearly erroneous" standard, as set forth in Fed. R. Bank. P. 8013.

## STATEMENT OF FACTS

### General Background

1.      On or about October 12, 2010 (the "Petition Date"), Hoti Enterprises LP and Hoti Realty Management, Co. Inc. (collectively, the "Debtor") filed Chapter 11 petitions. Bankruptcy Docket, Item 1.  (Unless otherwise noted, references to "Docket no." refer to the Bankruptcy Court docket in case no. 10-24129.)

2.      As of the Petition Date, the Debtor owned a residential apartment complex which is known as 2801 Fillmore Avenue, 3001 Avenue R, and 2719 Fillmore Avenue, Brooklyn, New York (the "Property").   May 3, 2012 Transcript, Docket no. 212, p. 4., lines 15-18

4

3.      GECMC 2007-C1 Burnett Street, LLC ("GE" or "GECMC") asserted a first priority mortgage (the "Mortgage") interest against the Property securing an indebtedness purportedly owed to it by the Debtors totaling $40,733,874.79, plus accrued and accruing fees, expenses and interest.   May 3, 2012 Transcript, Docket no. 212, p. 4, lines15- p.5, line 6.

**The Foreclosure Action**

4.      Before the Petition Date, on or about February 27, 2009, GE commenced a foreclosure proceeding concerning its alleged interest in the Property in the Supreme Court of the State of New York, County of Kings (the "State Court"), titled *GECMC 2007-Cl Burnett Street, LLC* v. *Hoti Enterprises, LP, et al,* Index No. 5009/2009 (the "Foreclosure Action").   By Order dated March 16, 2009, Barbara Odwak, Esq. was appointed receiver (the "Receiver") to collet rents and pay Property expenses, in lieu of continued management by the Debtor. Reconsideration Motion, Docket no. 126, p. 4.

**The Cash Collateral Stipulation and the Lift Stay Order**

5.      Following the Petition Date, the Debtor, through Robert Rattet as Debtor's counsel, and GE entered into a so-called cash collateral stipulation (the "Cash Collateral Stipulation") which was approved by order of the Bankruptcy Court on or about December 22, 2010, and which ultimately created the problem underlying this appeal.   Cash Collateral Stipulation, docket no. 43.

6.      By way of background, the purpose of a cash collateral stipulation is to permit a debtor to use a property's cash collateral (i.e. rents) to operate the subject property, but to limit and condition such use of rents to protect a mortgagee from misuse.   The Cash Collateral Stipulation in this case was unusual because the stipulation did not permit the Debtor to use the

5

Property's rents.   Rather it *denied* the Debtor the use of the rents, and instead continued the

Receiver in possession.   Even more puzzling, the Cash Collateral Stipulations imposed severe

limitations on the Debtor conduct of its Chapter 11 case ostensibly in consideration for the dubious

privilege of being *denied* the use of cash collateral.   Most significantly for the purposes of this

appeal, the Cash Collateral Stipulation (a) waived the Debtor's right to challenge GECMC's claim

after January 11, 2010 (a mere eighteen days during a holiday period after the Cash Collateral

Stipulation was approved) and (b) automatically vacated the automatic stay on the same January

11, 2010 date so that GE could continue its foreclosure at that time.   Cash Collateral Stipulation

Docket no. 43, p. 3 – 15.

       7.     The Cash Collateral Stipulation was also unusual, (actually quite

extraordinary), in that GE agreed to pay $50,000 to Mr. Rattet (Debtor's counsel) for legal fees

during the Chapter 11 case (Cash Collateral Stipulation, Docket No. 43, p. 10) even though GE had

no obligation to do so, and even though the Bankruptcy Code would otherwise have permitted

nothing to be paid to Debtor's attorneys from the Property's rents or from any proceeds of sale of

the Property, unless GE was first paid in full.   The money for legal fees, however, had strings

attached.   Debtor's counsel would only be entitled to payment for fees provided "that such fees

and expenses were *not* incurred in connection with the investigation or prosecution of any

objection to or claim or cause of action with respect to or against the Lender, the Secured Claim, or

the priority, validity or extent of Lender's liens." (Emphasis added) Id.

       8.     The Debtor understood that this was a bad deal and informed its counsel

Mr. Rattet that it would not agree to the terms.   Debtor's counsel nonetheless signed the

agreement on the Debtor's behalf.   This issue, among others, is presently briefed in a related

appeal pending in the District Court challenging the Bankruptcy Court's denial of the Debtor's

motion to reconsider that Cash Collateral Stipulation.

        9.      In any event, on or about January 19, 2011, the Bankruptcy Court entered

an order lifting the automatic stay to permit GE to proceed with its Foreclosure Action.   Lift Stay

Order, Docket no. 61.   At the same time, Mr. Rattet made a motion a motion to withdraw as

Debtor's counsel, which was granted by the Bankruptcy Court.   Motion to Withdraw, docket no.

59; Withdrawal Order, docket no. 64).

**The State Court Dismissal of the Foreclosure Action**

        10.     Following the January 19, 2011 lift stay order, GE resumed prosecution of

its Foreclosure Action.   In a reversal of fortune, however, by decision dated April 12, 2012, the

State Court dismissed the Foreclosure Action based upon GE's failure to be qualified to do

business in the State of New York.   Person Objection, Docket No. 163, ex. B.   GE obtained a stay

pending appeal and then GE moved for reconsideration of the dismissal of the Foreclosure Action.

State Court Decision, p.1, Docket no. 246.

**The GE Creditor's Chapter 11 Plan**

        11.     Perhaps sensing the impending jeopardy it faced in State Court, GE also

filed a Chapter 11 plan in the Bankruptcy Court on December 15, 2011, Docket no. 114.   The

Plan, as later amended (see Docket no. 227 for final confirmed version), provides for the Property

to be transferred to GE, and wipes out all other creditors except Mr. Rattet and another attorney

subsequently retained by the Debtors.   The Plan not only enables GE to avoid its State Court

defeat, the Plan also enables GE to transfer the Property under section 1146 of the Bankruptcy

Code, and thereby exempt itself from the otherwise applicable 2.75% transfer tax on real property,

thereby avoiding about $500,000 of taxes that would otherwise be due to the City and State of New York.   Confirmation Order, p. 22, Docket no. 240.

        12.    The initial confirmation hearing was held on May 3, 2012.   That was the same day as the hearing on the Debtors' application to reconsider the Cash Collateral Stipulation Order.   At that hearing, the Bankruptcy Court first denied reconsideration of the Cash Collateral Stipulation.   Turning to confirmation of the Plan, the Debtors objected arguing that issues concerning GE's standing were pending in the State Court Foreclosure Action as a result of GE's motion to reconsider the dismissal of its foreclosure, and that the Bankruptcy Court should therefore allow the State Court to first rule.   The Bankruptcy Court denied the request stating that the State Court would be bound by the doctrines of collateral estoppel and res judicata to honor the Bankruptcy Court's order approving the Cash Collateral Stipulation, and the Bankruptcy Court's order denying reconsideration of the Cash Collateral Order.   May 3, 2012 Transcript, p. 59-63, Docket no. 212.   The confirmation hearing was nonetheless adjourned at the behest of the IRS.

**The State Court's Decision finding that GE lacks a properly perfected security interest**

        13.    On June, 13, 2012, the day before the final confirmation hearing on GE's Chapter 11 plan to transfer the Property to itself, the State Court ruled on GE's motion to reconsider the dismissal of its foreclosure (the "State Court Decision").   The State Court not only adhered to its earlier dismissal order, the State Court found that GE lacked standing to prosecute the Foreclosure Action for the additional reason that **GE's interest in the Property was not properly perfected based upon missing and or forged documents in the chain of title**.   State Court Decision, p.5, Docket no. 246.

14.     It should be noted in that regard that after the Foreclosure Action was first dismissed on April 12, 2012, and after the Debtor made its motion to reconsider the Cash Collateral Stipulation in the Bankruptcy Court, GE created new documents to fill the gaps in the chain of title.   Not only did the State Court dismiss the Foreclosure Action for the second time on June 13, 2012 based upon the documents in existence at the time the Foreclosure Action was commenced in 2009, the State Court also found that GE's after the fact new documents were ineffective to cure the title defects.   State Court Decision, p. 4-5, Docket no. 246.

**Confirmation of the Chapter 11 Plan**

15.     The Bankruptcy Court confirmed GECC's plan, essentially finding that the State Court ruling on the defective assignments was not binding on the Bankruptcy Court because it only applied to the foreclosure action.   June 14, 2012 Confirmation Hearing Transcript, p.38, docket no. 281.

## ARGUMENT

**The Bankruptcy Court is bound by the State Court finding that GE does not have a properly perfected security interest based upon res judicata, collateral estoppel and the Rooker Feldman doctrine**

16.     Generally, interests in property are determined by State Law.   Interests in real property are no exception.   Indeed, following *Butner v. U.S.*, 440 U.S. 48 (1979), it is boilerplate law that the property interests of mortgagor and mortgagee are created and defined by state law.   Id. at 55

17.     By seeking and obtaining an order lifting the stay to enforce its loan documents in State Court, GE subjected itself to a determination of those rights in State Court.

9

And once the State Court decided those rights, the Bankruptcy Court, and indeed all federal courts, are bound to follow that decision.

18.     The Second Circuit recently ruled on a very similar issue in *In re Haven Eldercare, LLC*, Case no. 12-468-bk (2d. Cir. Nov. 15, 2012), a copy of which is annexed hereto. In *Haven*, the Bankruptcy Court entered an order in June 2008 transferring certain debtor assets to TC Healthcare free and clear of all creditor claims.   Subsequent to the sale of assets a Ms. Rachel Dupuis nonetheless sued Haven and TC in small claims court for tuition reimbursement, and won. *Haven,* p. 2.

19.     TC moved in the Bankruptcy Court to enforce the sale order, and thereby avoid Ms. Dupuis' judgment.   The Bankruptcy Court denied TC's motion finding that it was required to honor the Small Claims Court judgment because of the doctrines set forth in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v.Feldman*, 460 U.S. 462 (1983) (the "Rooker Feldman Doctrine").   The District Court affirmed based upon the alternative ground of *res judicata*. *Id.* p.2.   The Second Circuit affirmed the District Court based upon *res judicata*. *Id.* p.6.

20.     The *Haven* Court examined Vermont *res judicata* law and noted that Vermont imposes a three part test, as follows:

> Under that law, res judicata "will preclude a claim from being litigated if (1) a previous final judgment on the merits exists, (2) the case was between the same parties or parties in privity, and (3) the claim has been or could have been fully litigated in the prior proceeding."   *Iannarone v. Limoggio*, 190 Vt. 272, 279 (2011) (internal quotation marks omitted). "The doctrine does not require that claims must have been actually litigated in an earlier proceeding; rather, res judicata bars parties from litigating claims or causes of action that were or should have been raised in previous litigation." *Lamb v. Geovjian*, 165 Vt. 375, 380 (1996). Moreover, under Vermont law, a party is generally barred by res judicata from mounting a collateral attack on the subject matter jurisdiction of the court rendering a prior decision.

> "Unless a court has usurped power not accorded to it, its exercise of subject matter jurisdiction is binding in subsequent proceedings as long as the jurisdictional question was litigated and decided or the parties had an opportunity to contest subject-matter jurisdiction but failed to do so."  *In re B.C.*, 169 Vt. 1, 8 (1999) (*citing Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986)).   A mere error in the court's exercise of jurisdiction does not constitute such a usurpation; rather "a court will be deemed to have plainly usurped jurisdiction only when there is a total want of jurisdiction and no arguable basis on which it could have rested a finding that it had jurisdiction." *Nemaizer v. Baker*, 793 F.2d at 65 (internal quotation marks omitted).

*Id.* pp. 3-4.

21.    The Second Circuit then considered whether the Vermont small claims court had "usurped jurisdiction."   Citing 28 U.S.C. section 1334(b), the Second Circuit found that it did not usurp jurisdiction because the United States Code gives the Bankruptcy Court "original but not exclusive jurisdiction" over claims related to a bankruptcy proceeding.  *Id.* pp. 4-5.   In addition, the Second Circuit found that even if the Vermont small claims court lacked jurisdiction, its decision was still binding because the Vermont court had not "usurped" jurisdiction, since TC had failed to establish in Vermont small claims court that the Bankruptcy Court had exclusive jurisdiction.  *Id.* p. 5.

22.    TC nonetheless argued that even if the Vermont small claims decision controls by virtue of res judicata, the Bankruptcy Court can still enter an order barring enforcement of the judgment.   The *Haven* Court rejected this argument as an impermissible collateral attach on the Vermont judgment:

> Allowing collateral attack on a judgment when framed as a challenge to enforcement of the judgment "would be to make a mockery of the well settled doctrine of *res judicata*." *United States v. Secor*, 476 F.2d 766, 770 (2d Cir. 1973); *see Lerman v. Lerman*, 148 Vt. 629 (1987) (applying res judicata to bar attack on enforcement); *Wursthaus, Inc. v. Cerrata*, 149 Vt. 54 (1987) (same).

*Id.* p. 6.

11

23.     In this case, the same analysis applies.

24.     First, New York *res judicata* law precludes a challenge to state court foreclosure decisions.   Indeed, New York Bankruptcy Courts and District Courts routinely deny attempts by debtors to challenge State Court foreclosure judgments not only based upon *res judicata*, but also collateral estoppel and the Rooker-Feldman Doctrine, no matter how grave an injustice a borrower alleges the State Court committed.   *E.g. Swiatkowski v. Citibank*, 745 F.Supp.2d 150 (E.D.N.Y. 2010) aff'd 446 Fed.Appx. 36 (2d. Cir. 2011).   This case is unique only because it is the lender who is alleging that the State Court committed a grave injustice, rather than the borrower.   June 14, 2012 Confirmation Hearing Transcript, p.38-40, docket no. 281.   The result, however, should be no different.   The Bankruptcy Court lacks the authority to reverse the State Court Decision.

25.     Second, GE cannot argue that the State Court usurped jurisdiction since GE itself invoked that jurisdiction by seeking and obtaining the Lift Stay Order granting such jurisdiction to the State Court.   And nothing in the Lift Stay Order limited the State Court's jurisdiction.   To the contrary, the Lift Stay Order reads as follows:

> ORDERED, that GECMC is granted relief pursuant to 11 U.S.C. § 362(d)(2) and (3) from the automatic stay under 11 U.S.C. § 362(a) in the above-referenced cases *with respect to its interests in the Property* to enforce its rights in, and remedies in and to, the Property, including, but not limited to, the continuation of the pending foreclosure action in respect of the Property (styled GECMC 2007-C1 Burnett Street. LLC v. Hoti Enters. L.P., et al., (N.Y. Supreme Court, Kings County, Index No. 5006/2009)) and any sale of the Property at auction thereunder. (Emphasis added).

Lift Stay Order, p.2 Docket no. 61.

26.     In summary, GE sought, obtained and drafted the order of the Bankruptcy Court lifting the stay to permit the State Court to exercise its jurisdiction "with respect to [GE's] interests in the Property." *Id.*   Accordingly, GE has no credible basis to now argue that State Court either lacked or usurped jurisdiction to determine GE's interests in the Property.

27.     Indeed, even if GE can manufacture an argument that notwithstanding the language of the Lift Stay Order, the State Court was still required to honor the Cash Collateral Stipulation with respect to the perfection of GE's security interest, that did not give the Bankruptcy Court discretion to disregard the State Court Decision as a usurpation of jurisdiction because, at a minimum, the language of the Lift Stay Order is broad enough give the State Court a legitimate basis to assert jurisdiction.   In the words of the *Haven* Court, there is no basis to find usurpation based upon a ". . . total want of jurisdiction and no arguable basis on which it could have rested a finding that it had jurisdiction."   *Haven,* p. 4.

28.     Third, there is no basis for the Bankruptcy Court's ruling that the State Court finding that GE had not properly perfected its security interest only applies to the Foreclosure Action but not to the Bankruptcy case.   As noted above, interests in property under the Bankruptcy Code are defined by State law.   *Butner, supra.*   Thus, State law controls.   And the State Court held that GE is not properly perfected notwithstanding the existence of the Cash Collateral Order.   The Federal Courts, including the Bankruptcy Court are, therefore, bound to honor that holding.   As stated by the *Haven* Court, "to hold otherwise, would be to make a mockery of the well settled doctrine of res judicata."   *Haven,* p. 6.

**Although the State Court acknowledged during colloquy that the ultimate issue in the Foreclosure Action was whether GE was properly perfected as of the Foreclosure Action, the State Court Decision considered GE's subsequently created perfection documents and determined that those documents did not properly perfect GE either**

29.     Against this background, the Bankruptcy Court cited to colloquy during the State Court oral argument to find that the State Court Decision finding that GE was not properly perfected was limited to perfection as of the date the Foreclosure Action was initiated.   Transcript of July 12, 2012 Reconsideration Hearing, pp. 5-7, Docket no. 334.   The flaw in the Bankruptcy Court's reasoning is that the State Court Decision itself, as opposed to colloquy during oral argument, establishes that the State Court considered the documents that GE created subsequent to initiating the foreclosure and explicitly rejected the Bankruptcy Court's prior determination that such documents corrected the earlier defects.

30.     Indeed, the State Court Decision was detailed and specific in its intention not only to decide whether GE was properly licensed to do in business in New York at the time it commenced the foreclosure, but also whether GE had properly perfected its interests.   *State Court Decision*, p. 2-3 docket no. 246.   The State Court then determined that GE's interests were not properly perfected (p. 3-5).   Importantly, in reaching its decision that GE was not properly perfected at the time it commenced the foreclosure action, the State Court explicitly rejected the Bankruptcy Court's findings that the after-the-fact documents GE created closed the gaps in the chain of title.   The State Court held that such documents were not sufficient to perfect GE's interests:

> GECMC also quotes the bankruptcy court's statement on May 3, 2012 that "I conclude that based upon GECMCs supplemental memorandum in which it states and attaches exhibits supporting the statement that Deutsche Bank and it has corrected what the debtor [Hoti] contends was a defect in the chain of title renders the dispute moot in any event," renders their obligation to show that they had title at

the commencement of the Lawsuit and therefore standing moot.   This court believes that the documents which GECMC labels confirmatory are not sufficient to establish title or a proper assignment from Deutsche Bank.   It is well settled that the allonge regarding the assignment must be attached to the note and signed.   It is clear from the exhibits that the signature of the Director, Michelle Leighton is suspect.   The certificate of the secretary of GACC stating that "by unanimous consent, the Corporation ratified and approved and adopted a plan of complete Liquidation of DBMC authorized the dissolution of DBMC and that pursuant to the Plan of Liquidation, DBMC sold exchanged or liquidated to facilitate the liquidation, and made a liquidating distribution of all of its remaining assets to the Corporation ...." and the confirmatory allonge does not address the issue of whether the assignment itself was properly done and actually signed by the Director, Michelle Leighton.   There is no indication when the allonge was signed, nor is there a notary that would address the specific allonge signed by Michelle Leighton. In addition, GECMC can't fix it by saying that "as of April 23, 2012, the parties wish to confirm the actual and legal transfer of the note from the assignor to the assignee."

In addition, the question exists as to whether Deutsche Bank skipped a chain in the assignment of the Hoti/Note by assigning the mortgage straight to Wells Fargo without assigning the note to GACC which actually sold the Hoti mortgage/note to GE Commercial Mortgage Corporation pursuant to a loan servicing agreement into the securitization process. (See SEC prospectus dated May 1, 2007).   According to the prospectus an agreement was made between GACC (Seller) and GE Commercial Mortgage Corporation (Purchaser).   In the agreement GE Commercial Mortgage is to place the loans (of which the Hoti mortgage/note is one) into a trust entitled GE Commercial Mortgage Corporation, Series 2007-CI.

It is noted that GECMC never provided any original document regarding the note and the allonge supporting their allegation that they were in fact the owner or assignee of the mortgage and the note at the commencement of the action. GECMC was not the assignee of the Hoti mortgage/note at time the foreclosure proceding was filed.   It lacks standing because there was no proper assignment to it.   This action remains, for additional reason, as was determined by the April 4, 2012 decision and order, dismissed.

State Court Decision, pp. 4-5, Docket no. 246

31.    In summary, the fact that the State Court acknowledged that the ultimate issue was GE perfection as of the commencement of the foreclosure action does not diminish the State Court Decision finding that the documents GE created in April 2012 were ineffective to perfect GE's security interest at any time.   Since those documents were ineffective to perfect as of

2009, they were ineffective to perfect as of 2012.   Accordingly, the law of the case as of the June 13, 2012 State Court Decision was that GE did not properly its interests and therefore lacked standing to assert rights as a Mortgagee in State Court, and by virtue of *res judicata*, collateral estoppel and the Rooker Feldman doctrine, in Bankruptcy Court.

**The Lift Stay Order granted the State Court authority to examine the perfection of GE's security interests, whether or not the Cash Collateral Stipulation was presented to the State Court**

32.     The Bankruptcy Court's next stated that the Cash Collateral Stipulation was not before the State Court and, therefore, the State Court did not know that it was bound to honor the Bankruptcy Court order deeming GE properly perfected.   Transcript of July 12, 2012 Confirmation Reconsideration Hearing, pp. 8-9, Docket no. 334.   There are two (2) flaws in this reasoning.

33.     First, as detailed above, the Lift Stay Order gave the State Court authority with respect to GE's interests in the Property *after* the Cash Collateral Stipulation was so-ordered by the Bankruptcy Court.   Thus the Bankruptcy Court must honor the State Court Decision because the State Court did not usurp jurisdiction.   As stated by the *Haven* Court, there was not a "total want of jurisdiction and no arguable basis on which [the State Court] could have rested a finding that it had jurisdiction."

34.     Second, even if GE failed to provide the Cash Collateral Stipulation to the State Court, as TC failed to do in the *Haven* case, *res judicata* applies because GE's failure precludes a finding of usurpation.

35.     In summary based upon the undisputed facts of this case and compelling Second Circuit case law, the Bankruptcy Court erred in confirming GE's Chapter 11 Plan.

16

## **CONCLUSION**

WHEREFORE, the Appellants respectfully request that the District Court reverse the Bankruptcy Court, and that the Court grant such other, further and different relief as this Court may deem just and proper.

Dated:        New York, New York
              November 26, 2012


                              BACKENROTH FRANKEL & KRINKSY, LLP
                              Attorneys for the Appellants


                       By:    s/Mark A. Frankel
                              489 Fifth Avenue
                              New York, New York   10017
                              (212) 593-1100

12-468-bk
In re Haven Eldercare, LLC

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 15th day of November, two thousand twelve.

PRESENT:   BARRINGTON D. PARKER,
                      REENA RAGGI,
                      GERARD E. LYNCH,
                              *Circuit Judges.*
----------------------------------------------------------------------
IN RE HAVEN ELDERCARE, LLC,
                *Debtor.*
----------------------------------------------------------------------
TC HEALTHCARE I, LLC,
                *Plaintiff-Appellant*,


                      v.                                                          No. 12-468-bk

RACHEAL DUPUIS,
                *Defendant-Appellee.*
----------------------------------------------------------------------

FOR APPELLANT:                    Dominic Fulco III, Emily A. Gianquinto, Reid
                                                  and Riege, P.C., Hartford, Connecticut.

FOR APPELLEES:                    Racheal Dupuis, *pro se*, Whitehall, New York.

Appeal from a judgment of the United States District Court for the District of Connecticut (Mark R. Kravitz, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on January 12, 2012, is AFFIRMED.

Appellant TC Healthcare I, LLC ("TC Healthcare") filed a motion in the Bankruptcy Court for the District of Connecticut seeking to have the bankruptcy court enforce its June 2008 order (the "Sale Order") authorizing the sale of certain assets belonging to Debtors Haven Eldercare, LLC and its subsidiaries ("Haven") free and clear of any liens, claims, or encumbrances pursuant to 11 U.S.C. § 363.  Specifically, TC Healthcare, which had entered into an agreement in the course of the Haven bankruptcy to purchase and operate certain Haven facilities, sought an order from the bankruptcy court declaring that it was not liable to appellee Racheal Dupuis under the terms of a pre-bankruptcy contract between Dupuis and Haven relating to tuition reimbursement.  Before TC Healthcare filed its motion in the bankruptcy court, a Vermont small claims court had entered a judgment holding TC Healthcare liable to Dupuis under that contract.  The bankruptcy court denied TC Healthcare's motion on the ground that it was barred by the doctrine set forth in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  TC Healthcare appealed, and the district court affirmed the bankruptcy court on the alternate ground that the motion was barred by res judicata.  This appeal followed.  We assume the parties' familiarity with the underlying facts and the

2

procedural history of the case, which we reference only as necessary to explain our decision to affirm.

"An appeal from a district court's review of a bankruptcy court ruling is subject to plenary review." In re Halstead Energy Corp., 367 F.3d 110, 113 (2d Cir. 2004). "We accept [a] bankruptcy court's findings of fact unless clearly erroneous, but review its conclusions of law de novo." Id. at 114.

Like the district court, we conclude that TC Healthcare's enforcement motion is barred by res judicata, making it unnecessary to discuss the applicability of the Rooker-Feldman doctrine to the facts of this case. See Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 405 (2d Cir. 2006) (noting that court may affirm on any ground supported by the record). In analyzing the application of res judicata, federal courts must "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist., 465 U.S. 75, 81 (1984). Accordingly, to determine the preclusive effect of the judgment of the Vermont small claims court, we must look to Vermont law.

Under that law, res judicata "will preclude a claim from being litigated if (1) a previous final judgment on the merits exists, (2) the case was between the same parties or parties in privity, and (3) the claim has been or could have been fully litigated in the prior proceeding." Iannarone v. Limoggio, 190 Vt. 272, 279 (2011) (internal quotation marks omitted). "The doctrine does not require that claims must have been actually litigated in an earlier proceeding; rather, res judicata bars parties from litigating claims or causes of action

3

that were or should have been raised in previous litigation." <u>Lamb v. Geovjian</u>, 165 Vt. 375, 380 (1996).  Moreover, under Vermont law, a party is generally barred by <u>res judicata</u> from mounting a collateral attack on the subject matter jurisdiction of the court rendering a prior decision.  "Unless a court has usurped power not accorded to it, its exercise of subject matter jurisdiction is binding in subsequent proceedings as long as the jurisdictional question was litigated and decided or the parties had an opportunity to contest subject-matter jurisdiction but failed to do so." <u>In re B.C.</u>, 169 Vt. 1, 8 (1999) (citing <u>Nemaizer v. Baker</u>, 793 F.2d 58, 65 (2d Cir. 1986)).  A mere error in the court's exercise of jurisdiction does not constitute such a usurpation; rather "a court will be deemed to have plainly usurped jurisdiction only when there is a total want of jurisdiction and no arguable basis on which it could have rested a finding that it had jurisdiction." <u>Nemaizer v. Baker</u>, 793 F.2d at 65 (internal quotation marks omitted).

TC Healthcare first argues that <u>res judicata</u> does not apply because the Vermont small claims court was without jurisdiction to enter the judgment.  Specifically, TC Healthcare contends that the bankruptcy court, in its July 2008 Sale Order, retained exclusive jurisdiction over any disputes relating to that order.  This argument is without merit.  First, despite the wording of the Sale Order, the bankruptcy court's jurisdiction was concurrent rather than exclusive, because 28 U.S.C. § 1334(b) provides bankruptcy courts with "original but not exclusive jurisdiction" over claims such as Dupuis's, which are related to bankruptcy

4

proceedings.[1]   Second, even if the bankruptcy court's jurisdiction were exclusive, TC Healthcare would be unable to show that the Vermont court had "usurped" jurisdiction.   TC Healthcare had an opportunity to contest the jurisdiction of the small claims court during a December 2010 hearing that was held on Dupuis's complaint.   See In re B.C., 169 Vt. at 8. Indeed, it appears that it unsuccessfully attempted to enter into evidence a copy of the bankruptcy court's Sale Order, which would have informed the Vermont court that the bankruptcy court had purported to retain exclusive jurisdiction.   Unfortunately for TC Healthcare, it was not prepared at the hearing to offer the Sale Order in an admissible form. Having failed to admit the order into evidence, TC Healthcare cannot show that the small claims court "usurped jurisdiction" because, in the absence of the order, the matter before the small claims court was a simple state common law action for an amount under $5,000, which was well within that court's jurisdiction.   See Vt. R. Small Cls. P. 2(a) (affording the small claims court jurisdiction over "[a]ctions on claims for money damages not exceeding $5,000").

TC Healthcare next argues, as it did in the district court, that the judgments of the Vermont small claims courts are without res judicata effect pursuant to the decision of the Supreme Court of Vermont in Cold Springs Farm Development, Inc. v. Ball, 163 Vt. 466 (1995.   The district court addressed this issue in both its January 10, 2012 order affirming

---

[1]In re Hotel Syracuse, Inc., 155 B.R. 824 (Bankr. N.D.N.Y. 1993), cited by TC Healthcare, is inapposite because the jurisdiction there arose under what is now 28 U.S.C.§ 1334(e), which grants to the district courts exclusive jurisdiction over all property of the debtor and the estate.   Id. at 833.   Flanagan v. Arnaiz, 143 F.3d 540 (9th Cir. 1998), also involved a finding of exclusive jurisdiction.

the bankruptcy court's denial of TC Healthcare's enforcement motion and its January 23, 2012 order denying TC Healthcare's motion for reconsideration.  Having conducted an independent review of the relevant case law, we reject TC Healthcare's reliance on Cold Springs Farm for substantially the reasons set forth by the district court in the above decisions.

Finally, TC Healthcare argues for the first time on appeal that res judicata does not preclude an order barring enforcement of the Vermont judgment.  This argument is waived, see Virgilio v. City of New York, 407 F.3d 105, 116 (2d Cir. 2005) ("In general we refrain from passing on issues not raised below." (internal quotation marks omitted)), and in any event is without merit.  Allowing collateral attack on a judgment when framed as a challenge to enforcement of the judgment "would be to make a mockery of the well settled doctrine of res judicata."  United States v. Secor, 476 F.2d 766, 770 (2d Cir. 1973); see Lerman v. Lerman, 148 Vt. 629 (1987) (applying res judicata to bar attack on enforcement); Wursthaus, Inc. v. Cerrata, 149 Vt. 54 (1987) (same).

We have considered TC Healthcare's other arguments and conclude that they are without merit.  Accordingly, the judgment of the district court is AFFIRMED. Dupuis's motion to include documents is DENIED as moot.  TC Healthcare's motion to strike portions of Dupuis's brief is also DENIED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

6